**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 98-30790
Summary Calendar

_____


BEVERLY BLACHER,

Plaintiff-Appellant,

versus

BASF CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
(96-3119-B-M2)

_____

March 25, 1999

Before JOLLY, SMITH and WIENER, Circuit Judges.

Per Curiam[*]

In this appeal from the dismissal of her employment
discrimination suit, Plaintiff-Appellant Beverly Blacher asks us to
reverse the district court's orders granting summary judgment in
favor of Defendant-Appellee BASF Corporation.  For the reasons
expressed below, we agree with the district court and affirm.

**I**

**FACTS AND PROCEEDINGS**

BASF owns and operates a chemical plant complex in Geismar,
Louisiana.  Blacher, a black female, was hired by BASF in 1973 as

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

an accounting clerk. In 1980, Blacher was promoted from "Accounting Clerk II" to "Accounting Clerk I," a job classification in which she remained for the next 15 years. In 1995, BASF offered a "Voluntary Special Early Retirement Program" to 96 employees at Geismar who would be 50 years-old or older by June 30, 1995, including 56 year-old Blacher. Blacher was one of 77 employees who accepted the offer and retired. She signed the acceptance documents in the program on May 23, 1995, and her retirement became effective July 1, 1995.

Less than one year later, on May 10, 1996, Blacher filed suit in state court asserting myriad age- and race-based employment discrimination claims under former Louisiana statutes.[2] Specifically, Blacher alleged that BASF discriminated against her by (1) failing to promote her in 1979, 1980, and 1990; (2) consistently undercompensating her throughout her career; and (3) as a result of these acts, creating such an unpleasant work environment that Blacher felt compelled to retire.

BASF removed the action to federal court and thereafter filed a motion for summary judgment, which the district court granted as to all of Blacher's claims except constructive discharge. Four months later, BASF filed a second motion for summary judgment, submitting additional evidence on, and seeking dismissal of, the constructive discharge claim. Following oral argument, the

---

[2]LA. REV. STAT. ANN. §§ 23:972 & 51:2242, repealed by Acts 1997, No. 1409, § 4, effective Aug. 1, 1997. Louisiana's employment discrimination statutes were replaced by and consolidated in Chapter 3-A of Title 23 of the Revised Statutes, §§ 301-354. Acts 1997, No. 1409, § 4, effective Aug. 1, 1997.

district court granted BASF's second summary judgment motion and dismissed Blacher's action with prejudice.  Blacher timely filed this appeal.

**II**

**ANALYSIS**

A.    Standard of Review

We review the district court's grant of summary judgment <u>de novo</u>, applying the same standard as the district court.[3]

B.    Applicable Law

1.    Time Bar

A Louisiana statute makes it unlawful for an employer to "fail or refuse to hire, or to discharge, any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of age.[4]    Another state statute proscribes such discrimination on the basis of race.[5]  A cause of action brought under either of these statutes is a tort, governed by Louisiana's one-year prescriptive period.[6]  This period commences on the day

---

[3]<u>Hudson v. Raggio & Raggio, Inc.</u>, 107 F.3d 355, 356 (5th Cir. 1997).

[4]LA. REV. STAT. ANN. § 23:972, <u>repealed in</u> and <u>replaced by</u> Acts 1997, No. 1409, § 4, effective Aug. 1, 1997.

[5]LA. REV. STAT. ANN. § 51:2242, <u>repealed in</u> and <u>replaced by</u> Acts 1997, No. 1409, § 4, effective Aug. 1, 1997.

[6]LA. CIV. CODE ANN. ART. 3492 (West 1994).  <u>See</u> <u>Harris v. Home Sav. & Loan Ass'n</u>, No. W95-223 (La. App. 3d Cir. 7/27/95), 663 So. 2d 92, 94 (recognizing that state age discrimination claims are subject to a one-year prescriptive period).  Although no case has specifically addressed the prescriptive period for race claims brought under La. R.S. § 51:2242, we have held that an action under

3

that injury or damage is sustained.[7]  Blacher filed suit on May 10, 1996.  Thus, an action for any injury or damage sustained prior to May 10, 1995 is subject to the defense of prescription.

To avert application of this one-year prescription, Blacher asserts —— unartfully —— that the entire course of BASF's discriminatory conduct constitutes a continuing tort, which gives rise to a single cause of action.  In addition to contending that BASF discriminated against her on the basis of race or age or both when it failed to promote her to various accounting positions in 1979, 1980, and 1990, Blacher also claims that BASF consistently awarded higher pay raises to her younger co-workers, both black and white.  This discriminatory pay practice, says Blacher, culminated in the complete denial of a pay raise to her on May 1, 1995. Finally, as a result of BASF's discriminatory job advancement and compensation practices, argues Blacher, her working conditions became so intolerable that she was compelled to retire.  Thus, Blacher insists, because the damaging effects of all of BASF's

La. R.S. § 23:1006 —— a statute which also prohibited employment discrimination on the basis of race —— is a tort subject to article 3492's one-year prescriptive period. Williams v. Conoco, Inc., 860 F.2d 1306, 1306 (5th Cir. 1988). See also Winbush v. Normal Life of La., Inc., 599 So. 2d 489, 491 (La. App. 3d Cir. 1992), abrogated on other grounds, Harris v. Home Sav. & Loan Ass'n, No. W95-223 (La. App. 3d Cir. 7/27/95), 663 So. 2d 92 (recognizing with approval this Circuit's holding in Williams); Rhea v. Dillard Dep't Stores, Inc., No. 96-1404, 1996 WL 537447, at *4 (E.D. La. Sept. 20, 1996)(citing Williams and Winbush in support of the proposition that a claim brought under La. R.S. § 51:2242 is subject to a one-year prescriptive period).  Blacher does not challenge the general applicability of article 3492's one-year prescriptive period to her race claims, but argues, for other reasons, that her claims have not prescribed.

[7]LA. CIV. CODE ANN. ART. 3492 (West 1994).

4

adverse employment actions continued until the day she retired —— July 1, 1995 —— her claim never prescribed.  As we shall demonstrate, this argument is wholly without merit, and we reject it.

Louisiana's "continuing tort" doctrine —— analogous to the theory of "continuing violation" under federal law —— applies to situations in which the complained-of unlawful employment practice "manifests itself over time."[8]  According to this doctrine, otherwise unactionable conduct may become tortious as a result of its "continuous, cumulative, synergistic nature."[9]  Because, under such circumstances, it is difficult to pin-point the specific date of injury, "prescription does not commence until the last act occurs or the conduct is abated."[10]  Although there is no definitive standard for determining what constitutes a continuing tort, courts often consider such factors as the subject matter, frequency, and permanence of the conduct.[11]  Thus, if the alleged acts involve the same type of discrimination, are recurring, and lack the finality that would ordinarily trigger a plaintiff's awareness of and duty to assert his rights, the plaintiff will be relieved from the burden of proving that the entire violation occurred within the

---

[8]<u>Waltman v. International Paper Co.</u>, 875 F.2d 468, 474 (5th Cir. 1989); <u>Bustamento v. J.D. Tucker</u>, 607 So. 2d 532, 541 (La. 1992).

[9]<u>Bustamento</u>, 607 So. 2d at 542.

[10]<u>Id.</u> at 538 & 542.

[11]<u>Huckabay v. Moore</u>, 142 F.3d 233, 239 (5th Cir. 1998).

5

actionable period.[12]  If the plaintiff can show a series of related acts, one or more of which fall within the limitations period, his action will be timely.[13]

In the instant case, though, the conduct about which Blacher complains does not constitute a single continuing tort.  Rather, it is a series of discrete and salient events.  Even if we assume arguendo that BASF's adverse employment decisions were unlawfully discriminatory, each clearly would have given rise to an immediately apparent injury, resulting in the accrual of a distinctly separate cause of action, with prescription running one year from the date of each incident.  That Blacher may have felt the effects of BASF's decisions long after the date on which the employment action on each was taken, does not transform the challenged incidents into a single continuing tort.[14]

With the exception of her constructive discharge claim, all of Blacher's allegations of discrimination are rooted in separate and distinct employment decisions made by BASF prior to May 10, 1995, and are no longer viable.[15]  Consequently, we agree with the

---

[12]Messer v. Meno, 130 F.3d 130, 134-35 (5th Cir. 1997).

[13]Id.

[14]See Alldread v. City of Grenada, 988 F.2d 1425, 1431 (5th Cir. 1993).

[15]The district court found Blacher's discrimination claim based on BASF's May 1, 1995 pay raise denial viable for the seven week period from May 10, 1995 to July 1, 1995, but ultimately rejected the claim on its merits.  As BASF's May 1, 1995 employment action was taken more than one year prior to Blacher's filing of suit, however, we conclude that this claim too has prescribed and do not reach its merits.

district court's grant of summary judgment in favor of BASF on those claims.

2. Constructive Discharge

To assert a cause of action for discriminatory discharge under either or both of Louisiana's age and race employment discrimination statutes,[16] a plaintiff must first establish a prima facie case by demonstrating that (1) he was discharged, (2) he belongs to a protected class, (3) he was qualified for the position, and (4) individuals outside of the protected class were treated more favorably.[17]  When, as here, an employee resigns, he may satisfy the first requirement by proving constructive discharge.[18]  To do so, a plaintiff must demonstrate that his working conditions were so intolerable that a reasonable employee in his situation would have felt compelled to resign.[19]  Factors

---

[16]Because Louisiana's prohibitions against age discrimination (La. R.S. 23:972) and race discrimination (La. R.S. 51:2242) are virtually identical to that under federal law, both state and federal courts applying Louisiana law look to Title VII when determining whether a plaintiff has asserted a cause of action.  In making this determination, courts adhere to the evidentiary procedure established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[17]See Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 318 (5th Cir. 1997).  To satisfy the final step of a prima facie case of race discrimination, a plaintiff need only prove that he was replaced by someone outside the protected class.  Id.  In the context of age discrimination, however, a plaintiff may show that he was either (1) replaced by someone outside the protected class, (2) replaced by someone in the protected class but younger than the plaintiff, or (3) otherwise discharged because of his age.  Id. at 319.

[18]Id. at 319.

[19]Id.

7

such as (1) demotion, (2) reduction in salary or job responsibilities, (3) reassignment to menial or degrading work or to work under a younger supervisor, (4) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation, and (5) offers of early retirement on terms that, if accepted, would make the employee worse off regardless of whether the offer were to be accepted, may be considered by the court, either singly or in combination, when determining objectively whether a reasonable employee would have felt compelled to resign.[20]

If the plaintiff establishes a prima facie case, a presumption of discrimination arises. Then, to avoid liability, the employer must rebut this presumption by articulating a legitimate, nondiscriminatory reason for its action.[21] If the employer carries this burden, the presumption fades, and the plaintiff must prove that the true reason for the employment decision is unlawful discrimination, not the employer's proffered reason.[22]

Blacher contends that summary judgment was inappropriate because she adduced sufficient evidence to create a genuine issue of material fact as to whether she was constructively discharged and as to whether the reason for this adverse employment action was age or race discrimination, or both. In support of her contention, Blacher argues that BASF's denial of promotions and inequitable pay

---

[20]Barrow v. New Orleans Steamship Ass'n, 10 F.3d 292, 297 (5th Cir. 1994).

[21]Faruki, 123 F.3d at 319.

[22]Id.

8

raises made her working conditions intolerable.  Further, asserts Blacher, employment with BASF became exceedingly unpleasant when, in 1995, she was subjected to weekly performance reviews.  Blacher claims that BASF was "building a file against her" and that she had no choice but to retire.  Relying on nothing more than her own subjective belief that BASF's employment decisions were based on age and race, Blacher claims that a reasonable employee faced with such discriminatory treatment would have felt compelled to resign. We disagree.

Based on our <u>de novo</u> review, we conclude that Blacher has failed to adduce evidence sufficient to create a fact issue as to whether BASF placed her in an intolerable work environment.  There is no evidence that Blacher was demoted or reassigned or that, as a result of BASF's conduct, her work description changed in any way.  Furthermore, she has produced no evidence of "badgering, harassment, or humiliation" by BASF which would tend to support a finding of constructive discharge.  Although Blacher insists that BASF singled her out for weekly performance reviews, the record evidence indicates that such reviews were part of a plant-wide approach to improving productivity, and had been recommended for any number of employees who, like Blacher, experienced performance problems.  In addition, the simple fact that BASF may have been "building a file" on Blacher is not indicative of difficult or unpleasant working conditions, particularly when, as here, the evidence supports a finding that Blacher's productivity had historically been low.  Finally, with regard to BASF's allegedly-

9

discriminatory job advancement and compensation practices, we conclude that, under the circumstances presented in this case, instead of resigning, a reasonable employee would have continued to work while simultaneously pursuing the administrative and judicial employment discrimination remedies available to her under the law.[23]

When we view all facts in the light most favorable to Blacher, we are satisfied that her working conditions were not so intolerable that a reasonable employee would have felt compelled to resign. We conclude that Blacher elected to retire voluntarily; that she was not constructively discharged.

## III

## CONCLUSION

Blacher's failure both to file suit in a timely manner and to raise a genuine issue of material fact as to whether she suffered an adverse employment action is dispositive of her discrimination claims. Accordingly, any question whether BASF's alleged employment actions were motivated by discriminatory animus has been rendered moot. We hold, therefore, that the district court correctly granted summary judgment to BASF on Blacher's discrimination claims. The summary judgments of the district court are, in all respects,

AFFIRMED.

---

[23]See Ugalde v. W.A. McKenzie Asphalt Co., 990 F.2d 239, 243 (5th Cir. 1993).